IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                        Case Nos.: 3:08cr77/MCR
                                                    3:11cv196/MCR/EMT

ORESTES CABRERA

---

## REPORT AND RECOMMENDATION

This case is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, and supporting affidavit (docs. 177, 179). The Government filed a response (doc. 184), and Defendant filed a reply (doc. 186). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that both Defendant's request for an evidentiary hearing and his § 2255 motion should be denied. *See* Rules Governing Section 2255 Cases 8(a) and (b).

### PROCEDURAL and FACTUAL BACKGROUND

A criminal complaint was filed against Defendant on July 23, 2008, charging him with conspiracy to distribute and possess with the intent to distribute cocaine (doc. 1). Defendant was brought before this court pursuant to a writ of habeas corpus ad prosequendum,[1] and a first appearance was held on July 30, 2008, before then-Magistrate Judge Miles Davis (docs. 6, 7). Judge Davis designated a bilingual interpreter to assist Defendant, appointed the office of the Federal Public Defender to represent him, and ordered him temporarily detained (docs. 7, 8, 10, 11).

---

[1] Defendant was arrested by federal officials on July 29, 2008 (*see* doc. 12).

Defendant waived a detention hearing, and the undersigned found probable cause to detain him (docs. 13, 14). Randall Lockhart of the Office of the Federal Public Defender filed a notice of appearance on August 12, 2008 (doc. 15).

On August 19, 2008, Defendant was charged in a two-count indictment with conspiracy to possess with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine (count one) and possession with intent to distribute five hundred (500) grams or more of cocaine on a date certain (count two) (doc. 16). His case was originally set for trial on October 6, 2008 (doc. 34), but it was continued to the November trial docket upon Defendant's request (docs. 40–42; *see also* doc. 58). Co-defendant Willie James Whaley entered a plea of guilty pursuant to a written plea and cooperation agreement on October 23, 2008, before Defendant's rescheduled trial date (docs. 55, 56). Defendant filed three motions in limine, which the court ruled on at the time of voir dire and jury selection on November 4, 2008 (granting one, denying one, and denying one as moot) (*see* docs. 62, 63, 65, 74, 76, 77, 78). After, but on the same day a jury was selected, Defendant entered a plea of guilty to both counts of the indictment pursuant to a written plea and cooperation agreement (doc. 80).[2] Less than three weeks later, Attorney Lockhart filed an in-camera motion to withdraw, which motion was granted, and on December 10, 2008, Spiro Kypreos, a Criminal Justice Act ("CJA") attorney, appeared on Defendant's behalf (docs. 83, 84, 86). Mr. Kypreos moved to continue sentencing to allow him to review the transcript of the plea colloquy, and he advised the court that his new client had indicated an emphatic desire to withdraw his plea (doc. 92). The motion to continue was granted, and sentencing was continued from January 16, 2009, to March 20, 2009 (doc. 96).

On January 28, 2009, Mr. Kypreos filed a motion to withdraw Defendant's guilty plea (doc. 100). In this motion Defendant argued, among other things, that the penalty he faced (including the maximum penalty) had been misrepresented to him; that he had not been informed that he would be admitting to the drug counts charged in the indictment; that counsel had not explained the charges, the evidence against him, the Sentencing Guidelines or the immigration consequences of his plea;

---

[2] Because the claims raised in the instant § 2255 motion center around the voluntariness of Defendant's guilty plea, details of this proceeding are set forth below.

that the plea agreement had never been translated word for word for him; and that counsel had instructed him how to respond to the court's questions during the plea colloquy (doc. 100).[3]  The Government opposed the motion (docs. 106–107).  The court conducted a hearing on March 16, 2009, during which it heard testimony from Defendant, Mr. Lockhart, and interpreters Susan Taylor and Maria Santasier (doc. 134).  At the conclusion of the hearing the court orally denied Defendant's request to withdraw his plea (docs. 111, 113, 134).

On March 20, 2009, Defendant was sentenced to a term of 276-months imprisonment on each count, followed by a five-year term of supervised release (doc. 115).

Defendant appealed the denial of his motion to withdraw his guilty plea.  On appeal, he argued that the district court erred by disregarding his claim that he should have been permitted to withdraw his plea because he did not know that he could have filed a motion to suppress the cocaine seized from a rental vehicle he was driving when police stopped him, and that had he known this he would not have entered a plea of guilty (doc. 153 at 4).  The Eleventh Circuit, after reviewing the transcript from the Rule 11 hearing, was convinced that "[Defendant's] plea was free from coercion; that [Defendant] understood the nature of the charges; and that [Defendant] knew and understood the direct consequences of his plea" (*id.* at 6–7).  It concluded that "[b]ecause [Defendant] received close assistance of counsel and entered his plea knowingly and voluntarily, he failed to show a fair and just reason why his motion to withdraw his plea should have been granted" (*id.* at 7).[4]  The United States Supreme Court denied certiorari on October 19, 2010 (doc. 174).

The instant motion to vacate was timely filed on April 7, 2011 (doc. 177).  In this motion, Defendant raises three grounds for relief.  First he contends that the court failed to confirm that his plea of guilty was knowing, voluntary and intelligent.  Second, he claims that his first appointed counsel, Randall Lockhart, was ineffective because he did not object to the manner in which the plea proceeding was conducted (that is, the district court's failing to confirm Defendant's understanding

---

[3] Several of Defendant's assertions are squarely contradicted by the transcript of the plea colloquy.

[4] The final mandate issued on June 2, 2010 (doc. 153) (a previous mandate issued on March 25, 2010, was recalled by the appellate court (*see* docs. 148, 150)).

of the proceedings). Finally, Defendant asserts that his second appointed attorney, Spiro Kypreos, was constitutionally ineffective when he failed to properly challenge on appeal Mr. Lockhart's representation of Defendant during the plea proceeding. Defendant also assails Mr. Kypreos' performance at the hearing on the motion to withdraw his plea. The Government opposes the motion in its entirety.

<u>LEGAL ANALYSIS</u>

<u>General Standard of Review in § 2255 Proceedings</u>

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that: (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; <u>Thomas v. Crosby</u>, 371 F.3d 782, 811 (11th Cir. 2004); <u>United States v. Phillips</u>, 225 F.3d 1198, 1199 (11th Cir. 2000). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000); <u>Mills v. United States</u>, 36 F.3d 1052, 1056 (11th Cir. 1994); <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir. 1981); <u>Hidalgo v. United States</u>, 138 F. App'x 290 (11th Cir. 2005). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. <u>Nyhuis</u>, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. <u>Sanders v. United States</u>, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); Mills v. United States, 36 F.3d at 1055 (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); United States v. Frady, 456 U.S. 152, 165 (1982). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes: (1) cause for not raising the ground on direct appeal; and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.,* 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Gaskin v. Secretary, Dept. of Corrections, 494 F.3d 997, 1002 (11th Cir. 2007). "Strickland's two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990) (*citing* Hill v. Lockhart, 474 U.S. 52 (1985)); United States v. Pease, 240 F.3d 938, 941 (11th Cir. 2001). In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688; *see also* <u>Dingle v. Secretary for Dept. of Corrections</u>, 480 F.3d 1092, 1099 (11th Cir. 2007). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." <u>Yordan</u>, 909 F.2d at 477 (citing <u>Harich v. Dugger</u>, 844 F.2d 1464, 1469 (11th Cir. 1988); <u>Dingle</u>, 480 F.3d at 1099; <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. <u>Strickland</u>, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); <u>Chandler</u>, 218 F.3d at 1315 (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." <u>Chandler</u>, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369–70 (1993). A defendant therefore must establish that counsel's errors were so serious as to deprive him of a fair proceeding which had reliable results. *See* <u>Lockhart</u>, 506 U.S. at 369 (quoting <u>Strickland</u>, 466 U.S. at 687).

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. <u>Smith v. White</u>, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the <u>Strickland</u> test. <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992); <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991); <u>Stano v. Dugger</u>, 901 F.2d 898, 899 (11th Cir. 1990) (citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)); <u>United States v. Ross</u>, 147 F. App'x 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." <u>Chandler</u>, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. <u>Dingle</u>, 480 F.3d at 1099; <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" <u>Dingle</u>, 480 F.3d at 1099 (quoting <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).

<u>Defendant's Plea Proceeding</u>

Each of the claims Defendant raises in this case circle back to the premise that his plea was not knowing, voluntary and intelligent. Therefore, although by and large the proceeding appeared unremarkable, the court will summarize in detail the events of the plea proceeding.

As noted above, it was not until after the jury was selected that Defendant elected to enter a guilty plea. The change of plea proceeding began at 1:29 p.m. on November 4, 2008 (doc. 93 at 1). At the beginning of the proceeding, interpreter Maria Santasier was sworn in (*id*. at 2).[5] The court stated that it understood that Defendant wished to go forward with a guilty plea, and he confirmed that by responding in the affirmative (*id*.). The court asked whether Defendant understood that a jury had been selected and was waiting to hear his case, and he said that he did so understand (*id*.). When asked if it was his wish to proceed with a guilty plea at that time, he indicated that it was his wish to do so (*id*.). The court informed Defendant that before it could accept his guilty plea, it had to determine that his decision to enter the plea was made with knowledge of the charges and appreciation of the consequences, was voluntary, and was supported by the facts of the case (*id*. at 2–3). The court advised Defendant that he would be placed under oath

---

[5]Susan Taylor had served as interpreter during jury selection proceedings.

and required to answer some questions, and he was warned that failure to answer the questions truthfully could subject him to a separate charge for perjury (*id.* at 3). When asked if he understood that, Defendant answered "okay" (*id.*). At that point, Defendant was sworn (*id.*).

Before beginning to question Defendant, the court reminded Defendant that he had the assistance of an interpreter and advised him that if at any time he felt as though he had not understood the questioning or what was being said in the proceeding he should let the interpreter know, and she would in turn let the court know so the matter could be clarified for him (doc. 93 at 3). The court also told Defendant that if at any time and for any reason he wished to talk to his attorney to advise the court, and it would pause the proceedings so he would have time to consult with counsel (*id.* at 3–4). Defendant answered basic identifying and background questions about his family and his residence (*id.* at 4–5). He stated he was born in Cuba and attended school through the ninth grade there, leaving school to work (*id.* at 5). Defendant stated he could read and write Spanish (*id.* at 5–6). When asked whether he understood some English he responded "yes," but when asked if he wrote in English at all he said "no" (*id.* at 6). The court then asked Defendant whether he had obtained a driver's license in the United States, and he indicated that he had taken and passed the driver's license test here (*id.*). Defendant denied having been treated for any mental illness or diagnosed with any mental or psychological disorder, and he denied having consumed any alcohol or medication that might affect his ability to think clearly *(id.*). He answered in the affirmative when asked if he had a good understanding of why he was there (*id.*).

The court then told Defendant that he needed to listen carefully to its explanation of the rights guaranteed to him under the Constitution that he would be giving up if he entered a guilty plea (doc. 93 at 7). Defendant responded "okay" (*id.*). The court also advised Defendant that he had the right to remain silent and continue with a not guilty plea and that only he could make the decision to change his plea from not guilty to guilty (*id.*). Defendant again indicated "okay" (*id.*). The court told him that if he decided he did not want to go forward that day with a guilty plea, the jury trial would proceed, and Defendant stated "I understand" (*id*.). He was advised that he had a right to a trial by jury and he responded "okay" (*id*.).

The court next advised Defendant that he had the right to counsel to represent him at no cost to him, that he had the right to cross examine witnesses and compel witnesses to appear in his

behalf, and that he had the right but not the obligation to testify in his own behalf (doc. 93 at 7–8). The court told Defendant that his only obligation was to be physically present for the trial, because the burden was on the United States Attorney to prove his guilt beyond a reasonable doubt (*id*. at 8–9). The court reminded Defendant that if he entered a guilty plea, there would be no jury to decide the issue of his guilt or any issue related to his sentence, but rather that the court would resolve any such issue by a preponderance of the evidence (*id.* at 9). Defendant was advised that if he entered a guilty plea, he would be waiving any defenses he might have to the charges and relinquishing the right to appeal the matter of his guilt (*id.* at 10). He was also told that once he entered a guilty plea, the matter of his guilt would be settled and he would be unable to challenge it later (*id.*). The court explained that Defendant would not give up his right to appeal his sentence and noted that the Government had the same right to appeal (*id*.). At this point the court asked "Do you understand?" and Defendant responded, through the interpreter, "Okay" (*id*.). The court next explained that Defendant would still have the right to counsel on appeal even if he entered a guilty plea (*id*.). The following exchange then took place:

> THE COURT: Mr. Cabrera, have you understood these rights as I've explained them to you?
>
> THE INTERPRETER: Yes.
>
> THE COURT: And do you understand that by going forward with a guilty plea today, you'll be giving up these rights?
>
> THE INTERPRETER: Okay.
>
> THE COURT: With that understanding, do you still wish to proceed?
>
> THE INTERPRETER: Okay.

(Doc. 93 at 10–11).

The discussion then turned to the written plea agreement. Defendant confirmed that it was his signature on the document and that he had signed it that day (doc. 93 at 11). Defendant acknowledged that the plea agreement was read to him with the assistance of the interpreter, that he understood the contents of the document as it was read to him, that he had the opportunity to discuss the agreement with counsel prior to signing it, and that counsel was able to answer any questions about the document and Defendant's decision to proceed with a guilty plea (*id.* at 11–12).

Defendant denied that anyone had used any threats or pressure to try to get him to sign the document (*id.* at 12).

The court next went over the charges and potential sentence Defendant faced (doc. 93 at 12). Defendant acknowledged that he understood the charges (*id.* at 12). The court advised Defendant that his sentence would depend on whether he had a prior qualifying felony drug conviction, noting that if he did he faced a mandatory minimum term of imprisonment of ten years to life (*id.* at 12–13). Defendant responded "okay" (*id.* at 13). The Assistant United States Attorney noted that because of the quantity of cocaine involved, a ten-year minimum mandatory applied regardless of Defendant's prior criminal history (*id.*). Defense counsel concurred and noted that his client had been advised of such (*id.*). The court then reiterated the fact that Defendant faced a ten-year minimum mandatory and a maximum of up to life imprisonment with respect to count one, and Defendant stated that he understood (*id.* at 14). The court outlined the penalties Defendant faced on count two, including the five-year mandatory minimum sentence on that count, and when asked if he understood, Defendant stated "okay" (*id.*). The court asked Defendant whether it needed to explain the possible sentence any further, and counsel took a moment to speak with his client, who then stated "Yes, I understand" (*id.* at 14–15). Defendant also indicated his willingness to proceed (*id.*).

The court explained that it would look at the non-mandatory sentencing guidelines in determining the appropriate sentence, and that it could not go below the mandatory minimum sentences absent the Government's filing of a substantial assistance motion (doc. 93 at 15–16). Defendant stated that he understood (*id.* at 16). Defendant was warned that no one could tell him exactly what his sentence was going to be, other than that it would be at least the minimum mandatory sentence, and that he would not be able to withdraw his plea merely if he received a sentence that was harsher than he believed it would be (*id.* at 16–17). Defendant and the interpreter both indicated "okay," and the court asked Defendant "when you say okay, does that mean yes?" (*Id.* at 17). Defendant responded "yes" (*id.*).

The court explained to Defendant that he could expect to serve any sentence day for day, except for limited gain time, and that there was no possibility of parole (doc. 93 at 17). When asked if he understood, the interpreter asked the court to repeat its explanation (*id.*). The court re-

explained the matter, and when asked if he understood, Defendant indicated "okay" (*id.*). Defendant also stated that he understood the court's explanation of supervised release (*id*. at 17–18).

Defendant told the court that the issue of substantial assistance had been explained to him, and the court reminded him that the decision about whether to file such a motion is made by Government alone and that there were no guarantees that one would be filed (doc. 93 at 18). It also emphasized that the fact that a substantial assistance motion was not filed would not be a basis for withdrawing his guilty plea, and the fact that one was filed would not guarantee a reduction in his sentence (*id*. at 18–19). Defendant stated that he understood (*id*.).

Defendant confirmed that counsel had gone over the elements of the charged crimes as well as the factual basis for the plea agreement with him (doc. 93 at 19–20). When asked whether he had done what the Government said he had done in the factual basis, Defendant responded "yes" (*id.* at 20). The court asked whether this also included the amounts and Defendant said "excuse me,"[6] to which the court responded "Yes, that's fine" and then Defendant said "okay" (*id.*). The court specifically asked if Defendant was involved and did participate in the conspiracy and whether he himself possessed with the intent to distribute 500 grams or more of cocaine and Defendant answered "yes" to both questions (*id.* at 21).

The court asked Defendant whether he agreed that the contents of the plea agreement comprised the only agreement he had with the government about his case (doc. 93 at 21). He responded "okay," the court said "yes," and Defendant said "yes" (*id*.). The court specifically asked Defendant whether he had sufficient time to meet with counsel and discuss his decision to enter a guilty plea and whether he had been satisfied with counsel's representation of him, and he answered "yes" to both questions (*id*. at 22). The court told Defendant that a conviction would likely affect his immigration status and would likely lead to removal or deportation, and Defendant indicated that he understood (*id*.).

---

[6] The transcript does not reflect with certainty whether Defendant paused to confer with counsel at this point. However, in light of the claim raised in his motion to withdraw his plea, that counsel "did not explain to him before the plea that he would be making [admissions about the quantity of drugs involved in the conspiracy]" (*see* doc. 100 at 3), it is not unreasonable to conclude that this was the reason for the pause.

The court found that Defendant was alert and intelligent such that he fully appreciated the consequences of entering a guilty plea, that his decision to change his plea was a voluntary one made after consultation with counsel, and that the facts the Government were prepared to prove supported a guilty plea to the charges (doc. 93 at 23). The court asked Defendant whether he was ready to enter his plea, and he said "yes" (*id*.). Defendant was asked how he pleaded to each count separately, and in each instance both Defendant and the interpreter responded "guilty" (*id*. at 23–24).

<u>Defendant's specific claims for relief</u>

Defendant first claims in his § 2255 motion that the court should have probed beyond his "yes" and "okay" answers to ensure Defendant's intent, and that its failure to do so proves that the plea was unlawfully induced (doc. 177 at 10). In particular he points to the portion of the transcript which reflects that, when asked about the specific amounts of controlled substances involved in the conspiracy, he first responded "excuse me" (*see* doc. 93 at 20). Defendant now claims that this isolated comment was an "attempt to object" to the plea proceeding before the plea was accepted, and that the district court's failure to delve into the meaning behind his statement is proof that the plea was involuntary.

The Government argues that because the validity of Defendant's plea was the lone issue raised on appeal, Defendant's collateral attack on the validity of his plea is procedurally barred. On appeal, Defendant argued only that the district court erred by disregarding his claim that he should have been permitted to withdraw his plea because counsel did not explain to him that he could have filed a pre-plea motion to suppress (doc. 153 at 4). The Eleventh Circuit's opinion went beyond this seemingly limited challenge to the district court's decision and concluded that Defendant had not shown any fair and just reason why he should have been allowed to withdraw his plea because the plea proceeding satisfied the core concerns of Rule 11 (*id*. at 5–6). It specifically found that the plea was free from coercion, that Defendant understood the nature of the charges, and that Defendant knew and understood the direct consequences of his plea (*id*. at 6–7). Having so found, the Eleventh Circuit ruled that the district court did not abuse its discretion by denying the motion to withdraw the plea (*id*. at 7).

Therefore, although the issue raised herein is not precisely the issue presented to the appellate court, a challenge to Defendant's guilty plea is foreclosed by the Eleventh Circuit's broad ruling that the plea comported with the requirements of Rule 11. Nyhuis, *supra*.

Additionally, even if this claim was not procedurally barred, the court finds that Defendant's assertion is utterly unpersuasive in light of his failure to make anything that could be construed as an objection throughout the remainder of the proceeding. Furthermore, a review of the transcript suggests that instead of an "objection," it is conceivable that Defendant said "excuse me" while he took a moment to confer with counsel and then said "okay." Finally, it is suspect that Defendant's "change of heart" is only mentioned now for the first time and was not among the myriad bases for relief raised in his motion to withdraw his plea, which was filed by Mr. Kypreos, his second appointed attorney.

Defendant next claims that his first appointed counsel, Randall Lockhart, was constitutionally ineffective during the plea proceeding because counsel failed to advise him of an affirmative defense or objection (doc. 177-1 at 17). He further asserts in an attachment to his "sworn declaration" (doc. 179) that counsel "abused my inferior knowledge of English and the court and legal proceedings to induce me into entering and signing a guilty plea when in fact I am innocent of the charges I have been accused of" (*id.* at 4).

An allegation of a coerced plea, supported by a factual allegation, can support a §2255 motion. *See* Fontaine v. United States, 411 U.S. 213, 214–15 (1973); United States v. Lampazianie, 251 F.3d 519, 524 (5th Cir. 2001). However, a defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings. Blackledge v. Allison, 431 U.S. 63, 73–74 (1977); *cf.* Holmes v. United States, 876 F.2d 1545, 1550 (11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea). Solemn declarations made under oath in open court carry a strong presumption of verity. Blackledge, 431 U.S. at 73–74; United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994) (citing United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987)); United States v. Munguia-Ramirez, 267 F. App'x 894 (11th Cir.

2008).[7]  They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice.  Blackledge, 431 U.S. at 73–74;  United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984) ("[T]he presumption of truthfulness of [defendant's] Rule 11 statements will not be overcome unless the allegations in the § 2255 motion . . . include credible, valid reasons why a departure from those earlier contradictory statements is now justified."); *see also* Gonzalez-Mercado, 808 F.2d at 800 n.8 (while not insurmountable, there is a strong presumption that statements made during a plea colloquy are true, citing Blackledge and other cases); Downs-Morgan v. United States, 765 F.2d 1534, 1541 n. 14 (11th Cir. 1985); Potts v. Zant, 638 F.2d 727, 750–51 (5th Cir. 1981) (citing United States v. Sanderson, 595 F.2d 1021 (5th Cir. 1979)).  Consequently, a defendant "bears a heavy burden to show his statements [under oath] were false."  United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988); United States v. Green, 275 F. App'x 941 (11th Cir. 2008); United States v. Cardenas, 230 F.App'x. 933 (11th Cir. 2007).  "[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely."  United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (quoting United States v. Barrett, 514 F.2d 1241, 1243 (5th Cir. 1975)).

Counsel Randall Lockhart has submitted a detailed affidavit in rebuttal to Defendant's claims (doc. 184-1).  Counsel firmly asserts that Defendant's plea was knowing, voluntary and intelligent (*id*. at 1).  He notes that his client changed his mind about entering a guilty plea after hearing the Government's witness list during jury selection and that counsel appropriately counseled Defendant about the risks and benefits of that decision at the time (*id*.).  Counsel is of the opinion that Defendant sabotaged his (Defendant's) own educated decision to plead guilty and cooperate with the Government by shortly thereafter denying his involvement and making false ineffective assistance of counsel claims, and that the current motion is a result of Defendant's dissatisfaction with having to face the consequences of this poor decision-making (*id*. at 2).  Mr. Lockhart notes that Defendant previously filed an unsuccessful complaint with the Florida Bar against him,

---

[7]  The undersigned cites Munguia-Ramirez only as persuasive authority and to show the continued viability of Gonzalez-Mercado, and recognizes that the opinion is not considered binding precedent.  *See* 11th Cir. R. 36-2.

asserting that Defendant was somehow "tricked" into pleading guilty (*id.*; *see also* Counsel's response to bar complaint, *id.* at 4–26). Counsel also notes that even if Defendant's assertion of having been tricked is correct, Defendant offers no explanation as to why he did not tell counsel or the court, either directly[8] or through the interpreter, that he had changed his mind and wanted to proceed with his jury trial (*id.* at 2). Mr. Lockhart refers the court to his February 17, 2009 response to Defendant's bar complaint for an explanation of the detail with which Defendant was counseled concerning his decision to enter into a plea and cooperation agreement (*id.* citing *id.* at 8–9, 11–12), as well as notes created contemporaneously with the events detailing his client's continued refusal to cooperate with him throughout the trial preparation process (*id.* at 15–22).

Defendant now suggests that Mr. Lockhart should have objected to the court's failure to "penetrate" his forty-four "yes" and seventeen "okay" responses during the plea proceeding, and that counsel's failure to do so rendered his performance constitutionally deficient. In making this assertion Defendant relies entirely on language taken from the Eighth Circuit case of <u>Wilkins v. Bowersox</u>, 145 F.3d 1006 (8th Cir. 1998). The <u>Wilkins</u> court disapproved of leading questions that required only "yes" or "no" answers and did not allow a Defendant to articulate his reasoning process, and noted that "a judge has an obligation to penetrate the surface with a more probing inquiry to determine if the waiver is made knowingly, intelligently, and voluntarily." *Id.* at 1012 (citation omitted). Even if this Eighth Circuit case is binding upon this court, which it is not, <u>Wilkins</u> is factually distinguishable. In <u>Wilkins</u>, the court considered not the voluntariness of a counseled guilty plea, but rather a defendant's complete waiver of counsel during criminal proceedings that could (and did) result in the imposition of the death penalty. *See id.* at 1010–15. Furthermore, the <u>Wilkins</u> defendant, who was only 17 years old at the time of sentencing, had a

---

[8] Counsel notes that Defendant speaks and understands the English language very well (doc. 184-1 at 2). Mr. Lockhart refers the court to his response to Defendant's complaint to the Florida Bar, which addresses the fact that Defendant speaks and understands English quite well and had previously attempted to manipulate legal proceedings or other circumstances by claiming otherwise (*id.* at 2–3, citing *id.* at 5, 7–9, 11, 13, 22). The undersigned notes that during the hearing on Defendant's motion to withdraw his plea, he had to be instructed several times not to answer until the translation had been finished, a fact the district court later noted (doc. 134 at 6, 8, 13, 75). Defendant admitted he understood "some" English (*id.* at 10, 26), and even the interpreter noted that Defendant was speaking English and Spanish (*id.* at 13). Defense counsel also testified that during his discussions with Defendant, Defendant spoke Spanish and English (*id.* at 50, 51).

severely troubled childhood, had been a drug user since the age of five, and had been in and out of mental health facilities by the age of ten, which are extraordinary characteristics that are not shared by Defendant in the case at bar. *Id.* at 1012–13, 1015. The select citations culled from Wilkins neither support nor prove Defendant's assertion that Attorney Lockhart was constitutionally ineffective for his failure to insist that the court delve more deeply into Defendant's responses to questions posed at the plea proceeding. Nor do they prove that his counseled guilty plea was not voluntary, knowing and intelligent, as two courts have previously found. Even if the court credits Defendant's assertion that he changed his mind about entering the guilty plea during the course of the plea proceeding, he has not established constitutionally deficient performance on the part of Mr. Lockhart. It is clear from the record that Defendant spoke at least some English and had an interpreter on hand at all times to assist him. Nevertheless, there is no evidence that Defendant ever attempted to communicate anything to counsel that would have placed counsel on notice that Defendant wished to stop the proceedings and instead proceed with a jury trial. Defense counsel is not charged with clairvoyance, and he is not constitutionally ineffective for failing to divine something that his client did not communicate to him.

Finally, in his third ground for relief Defendant assails the performance of his second appointed counsel, Mr. Kypreos. Defendant argues that the plea proceeding should be overturned because "Mr. Kypreos has shown on record how easy it was to turn my understanding of 'no' into a 'yes' or 'exactly' by leading me into statement that benefit [sic] the plea agreement" (doc. 177-1 at 17). The court interprets this argument as a claim by Defendant that Mr. Kypreos was constitutionally ineffective in the manner in which he carried out his representation at the hearing on Defendant's motion to withdraw his guilty plea. The undersigned has reviewed the transcript of the motion hearing, at which the district court heard testimony from the Defendant, Attorney Lockhart, translators Susan Taylor and Maria Santasier, and Okaloosa County Sheriff's Deputy Al McDonough (doc. 134 at 3–72). Mr. Lockhart, Ms. Taylor and Ms. Santasier testified in detail about how the interpretation process worked, what information had been provided to Defendant in preparation for the plea proceeding, and the fact that the plea agreement had been painstakingly read verbatim to Defendant in Spanish (*id.* at 32–70). The evidence presented contradicted virtually all of the assertions made in Defendant's motion (doc. 100). Thus, at the close of the hearing, Mr.

Kypreos was left to argue merely that his client said that the interpreter told him one thing, and something else appeared in the court record (doc. 134 at 73).

The district court rejected this position. It thoroughly summarized all the evidence it had heard and concluded that Defendant was "once again trying to beat [the] charges [and] work the system" by "conveniently" hearing what he wanted to hear and choosing not to recall other pertinent aspects of his plea (*id.* at 80). It specifically reiterated that Defendant's plea was knowing, intelligent, voluntary and free of coercion (*id.*). Defendant has not suggested what else Mr. Kypreos could or should have done at this proceeding to mount a successful challenge to the voluntariness of his guilty plea, and thus he has not established that Mr. Kypreos was in any way ineffective in this regard.

Similarly, Defendant has not established that Mr. Kypreos' appellate representation of him was constitutionally ineffective. Defendant's suggestion in his motion that "counsel never briefed the appellate court w/any facts supporting the First CJA atty. ineffective performance" (doc. 177 at 4) is misguided, as claims of ineffective assistance of counsel are generally not cognizable on direct appeal. *See* Massaro v. United States, 538 U.S. at 503; Patterson, 595 F.3d. at 1328. And again, he has not suggested what else counsel could or should have done that would have altered the outcome of the appeal in this case. Defendant's conclusory allegations do not entitle him to relief. *See* Wilson, 962 F.2d at 998; Tejada, 941 F.2d at 1559; Stano, 901 F.2d at 899.

Section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief." A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). In this case, no evidentiary hearing is warranted, and Defendant's motion should be denied.

## CERTIFICATE OF APPEALABILITY

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §

2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.       The motion to vacate, set aside, or correct sentence (doc. 177) be **DENIED and DISMISSED**.

2.       A certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>13</u><sup>th</sup> day of May 2013.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

        **Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**